**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GALIP GUREL and ALI GUREL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-cv-799** |
| | ) | |
| **JOHN F.A. HARKRIDER; ALTO** | ) | |
| **PARTNERS US, LLC; and LIDIA** | ) | |
| **SARIMSACKI AS HEIR TO THE** | ) | |
| **ESTATEOF YUSUF SARIMSAKCI,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Dr. Galip Gurel and Ali Gurel ("Plaintiffs") file this Original Complaint against John F.A. Harkrider ("Harkrider" or "Mr. Harkrider"), Alto Partners US, LLC ("Alto"), and Lidia Sarimsakci as Heir to the Estate of Yusuf Sarimsakci ("Mrs. Sarimsakci") (collectively, "Defendants") and would respectfully show this Court the following:

**I.    INTRODUCTION**

Plaintiffs Dr. Galip Gurel and Ali Gurel are before this Court because they have been defrauded. Defendants took advantage of Plaintiffs' desire for Ali Gurel, the son of Dr. Galip Gurel, to have an E-2 treaty investor visa and helped themselves to $300,000 of Dr. Gurel's money. Dr. Gurel reached out to Defendant John Harkrider, an acquaintance from several years earlier, because Mr. Harkrider had claimed expertise in obtaining investor visas and claimed a special relationship with the U.S. State Department, allegedly based on his close work with the State Department in the Middle East and in Cyprus. Mr. Harkrider told Dr. Gurel that if he made a $300,000 investment in Alto Partners US, LLC ("Alto"), Yusuf Sarimsakci (a principal of Alto)

("Sarimsakci" or "Mr. Sarimsakci") would become a partner with Ali Gurel in a to-be-formed subsidiary company, Alto Houston 1. According to Mr. Harkrider, that $300,000 investment and the resulting partnership would be sufficient for Ali Gurel's application for an E-2 treaty investor visa with the United States Citizenship and Immigration Services ("USCIS"). Based on these representations, Dr. Gurel paid Mr. Harkrider $100,000 in cash, and transferred another $200,000 into the account of Mr. Sarimsakci. Mr. Harkrider had an associate of his prepare the paperwork for Ali Gurel's E-2 visa, but when Ali Gurel attended an interview to obtain the visa, it was denied. Mr. Harkrider claimed that another interview would surely change the outcome, but offered no reason why. Despite repeated requests, no accounting has been provided of what has been done with Dr. Gurel's $300,000 or offered any proof that the money has been invested, rather than stolen. Following Mr. Sarimsakci's death, neither his estate nor Mr. Harkrider have accounted for or returned any of the $300,000 to Dr. Gurel. Plaintiffs bring this case to seek a return of the money stolen from them by Mr. Harkrider, Mr. Sarimsakci, and Alto, through repeated false representations.

## II.    JURISDICTION AND VENUE

1.      Jurisdiction in the United States District Court for the Western District of Texas is proper based on the diversity of citizenship between the parties and because the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

2.      The exercise of personal jurisdiction in Texas is proper. Mr. Harkrider, upon information and belief, is a citizen of Texas. Alto Partners US, LLC is registered to do business in Texas as a Foreign Limited Liability Company. Further, Alto Partners US, LLC and Mr. Sarimsakci had significant business operations in Texas, including those that were included as part

of the false representations made to Plaintiffs.  Mr. Sarimsakci also is on record as a governing person in another Texas entity as well.

3.      Venue is proper in this Court because Mr. Harkrider, upon information and belief, is a resident of this District and Alto Partners US, LLC, of whom Mr. Sarimsakci was a principal, is registered to do business in Texas and has business operations in this District, including those that were included as part of the false representations made to Plaintiffs. 28 U.S.C. § 1391(b, c).

## III.    PARTIES

4.      Plaintiff Dr. Galip Gurel is a citizen of the Republic of Turkey and currently resides at Tesvikiye cad, Bayer apt, 63/6 Nisantasi, Istanbul, Turkey.  Dr. Galip Gurel may be served with pleadings and process in this proceeding through the undersigned counsel.

5.      Plaintiff Ali Gurel is a citizen of the Republic of Turkey. He currently resides at Valikonagi cad. Ciftiler apt. 12/5 Istanbul, Turkey, but regularly travels to the United States as a tourist. Ali Gurel may be served with pleadings and process in this proceeding through the undersigned counsel.

6.      Defendant John F.A. Harkrider is an individual who may be served with summons at 105 Young St. #617, Liberty Hill, TX, or wherever he may be found.  Harkrider, upon information and belief, is a citizen of Texas.

7.      Defendant Alto Partners US, LLC ("Alto") is an active limited liability corporation formed under the laws of Maryland and registered to do business in Texas that may be served with summons through its registered agent on file with Texas – Yusuf G. Sariusaku, 26111 Monarch Meadow Court, Katy, TX 77494, or through its registered agent in Maryland – Michael Sabracos at 707 President St., Ste. 640, Baltimore, MD 21202, or at its principal place of business listed in the most recent Texas Franchise Tax Public Information Report – 1211 Olivet Street, La Jolla, CA

92037, or wherever else it may be found. Upon information and belief, Alto's primary business is property development, including development of property in Texas.  Upon information and belief, none of Alto's members are citizens of Texas or aliens.

8.      Upon information and belief, Defendant Lidia Sarimsakci is (at least one of) the heir of Yusuf Sarimsakci, an individual who died on or about March 15, 2019, and is being sued in her capacity as his heir.  Mr. Sarimsakci died in March 2019. Plaintiffs seek a remedy from the Estate of Yusuf Sarimsakci (the "Estate") through Lidia Sarimsakci as heir to the Estate, who can be served with summons at 6333 La Jolla Blvd., Unit 372, La Jolla, CA 92051, or wherever she may be found.  Upon information and belief, Lidia Sarimsakci, in her capacity as the heir of the Estate, is a citizen of California.

### IV.    FACTUAL BACKGROUND

9.      Dr. Gurel desired to obtain an E-2 treaty investor visa from USCIS for his son, Ali Gurel, a Turkish citizen who currently lives in Istanbul.

10.      In the beginning of 2018, Dr. Gurel contacted Mr. Harkrider, an acquaintance from a few years prior. Mr. Harkrider had represented to Dr. Gurel that he had a special relationship with the U.S. Department of State based on his work in post-conflict zones in the Middle East and Cyprus, and that he had successfully assisted investors with obtaining E-2 visas.

11.      When contacted by Dr. Gurel, Mr. Harkrider confirmed that he had such special relationship with the State Department and could assist Dr. Gurel in obtaining an E-2 treaty investor visa for his son, Ali Gurel.

12.      Mr. Harkrider told Dr. Gurel about a property investment company, Alto, which Mr. Harkrider stated was owned by Yusuf Sarimsakci.  Mr. Harkrider also made several representations to Dr. Gurel at that time.

13.     Mr. Harkrider represented that, if Dr. Gurel invested $300,000 into Alto, that company would spin off a subsidiary, Alto Houston 1, LLC, in which Ali Gurel and Mr. Sarimsakci would be partners.

14.     Mr. Harkrider represented that Alto Houston 1 would purchase and renovate houses for profit in the area of Houston, Texas.

15.     Mr. Harkrider represented that the $300,000 investment and the partnership arrangement for Alto Houston 1 would be a sufficient investment for Ali Gurel to receive an E-2 visa.

16.     Mr. Harkrider also represented that Alto would pay Dr. Gurel an annual payment of 3% interest as a return on his $300,000 investment.

17.     For a Turkish citizen to qualify for an E-2 nonimmigrant treaty investor visa, s/he must (i) invest or be actively in the process of investing "a substantial amount of capital in a bona fide enterprise in the United States, as distinct from a relatively small amount of capital in a marginal enterprise solely for the purpose of earning a living;" (ii) be seeking entry "solely to develop and direct the enterprise;" and (iii) intend to "depart the United States upon the expiration or termination of treaty investor (E-2) status." 8 C.F.R. § 214.1(a)(2); § 214.2(e)(2) (2007).

18.     In approximately August 2018, Mr. Harkrider arranged to meet the Gurels in Istanbul, Turkey.

19.     At this meeting with Plaintiffs, Mr. Harkrider again represented that he and Mr. Sarimsakci along with Alto would create a new subsidiary to enable Ali Gurel's successful application for an E-2 visa. Mr. Harkrider stated that, upon receipt of $300,000 from the Gurels, the Alto Houston 1 subsidiary would be created, with Ali Gurel and Mr. Sarimsakci as partners.

20.    At that meeting, Mr. Harkrider provided information for the Gurels to transfer $200,000 to the account of Mr. Sarimsakci for the investment. Also at that meeting, the Gurels provided Mr. Harkrider $100,000 in cash.

21.    Following that meeting, Ali Gurel accompanied Mr. Harkrider to Garanti BBVA Bank, to deposit the cash into Mr. Harkrider's Turkish account. Mr. Harkrider told the Plaintiffs that he would transfer the $100,000 to his account in the United States and that it would be used to invest into the new subsidiary company of Alto on Ali Gurel's behalf.

22.    Around the same time, Dr. Gurel arranged for $200,000 to be transferred using the instructions provided for Mr. Sarimsakci's account.  The $200,000 was sent in two transfers, on or about August 17, 2018 and September 4, 2018.

23.    Following the transfers, Ali Gurel requested information about and access to the bank accounts holding the invested money, but Mr. Harkrider said he did not have access to them and could not provide that information. Instead, Mr. Harkrider told Plaintiffs that Mr. Sarimsakci would provide that information to them on an upcoming Skype call. Neither Plaintiff ever received information about or any access to those accounts.

24.    Mr. Harkrider informed Ali Gurel that one of Mr. Harkrider's associates, Mr. Askhan Amami, would complete Ali Gurel's paperwork for the E-2 treaty investor visa and send it to him.

25.    Ali Gurel submitted the E-2 treaty investor visa application file via a U.S. Government website on September 18, 2018.

26.    Ali Gurel was interviewed by an employee of the U.S. Consulate in Istanbul on October 25, 2018. His E-2 visa application was rejected.

27.    After his application was rejected, Ali Gurel decided he did not want to re-apply for the E-2 visa. Dr. Gurel requested that Mr. Harkrider return his investment, but Mr. Harkrider would not agree, stating that Ali Gurel's application would be approved upon a second interview with no further explanation as to why or how.

28.    After that time, throughout late 2018 and early 2019, Dr. Gurel sent numerous messages to Mr. Harkrider requesting an acknowledgement, guarantee, or other details of the investment in Alto, but did not receive any assurances or additional information.

29.    On February 12, 2019, Dr. Gurel, though his attorney, sent Mr. Harkrider a letter demanding the return of his $300,000 and requesting an accounting of the investment to date. No reply to that letter has been received.

30.    Dr. Gurel also sent Mr. Sarimsakci and Mr. Harkrider an email detailing his investment and interactions with Mr. Harkrider to date.

31.    Mr. Harkrider responded to this email angrily, threatening to file a lawsuit against Dr. Gurel for defamation. He also said that if Dr. Gurel continued to pursue repayment of his investment, Ali Gurel would be arrested and permanently deported from the United States.

32.    Upon Dr. Gurel's request, Mr. Harkrider arranged a meeting between Mr. Sarimsakci and Dr. Gurel via Skype for February 27, 2019.

33.    During that meeting, Mr. Sarimsakci said he understood Dr. Gurel's situation, but claimed that the entire $300,000 was invested in a real estate project at that time. Mr. Sarimsakci said he would try to repay the money to Dr. Gurel within one year.

34.    Dr. Gurel asked Mr. Sarimsakci for a good faith gesture of repayment, such as a post-dated check. Mr. Sarimsakci declined to provide any post-dated check or other assurance or security.

35.     Mr. Sarimsakci and Mr. Harkrider, at all times during the meeting, communicated as partners in the business. Mr. Sarimsakci agreed with and accepted the actions of Mr. Harkrider, including those that had previously been taken by Mr. Harkrider, and both represented that they were working together in Alto and on the supposed investment.

36.     Upon information and belief, Mr. Sarimsakci died on March 15, 2019, and his heir is Defendant Lidia Sarimsacki.

37.     On or about April 3, 2019, Dr. Gurel received a proposed promissory note from Mr. Harkrider via email. This proposed promissory note is attached as **Exhibit 1**.

38.     The promissory note stated that Dr. Gurel had "loaned $300,000" to  "Yusuf Sarimsakci c/o Alto Partners" and that Mr. Sarimsakci promised "to exert his best good faith efforts to repay" Dr. Gurel $300,000 plus interest by August 1, 2020. It defined the "Maturity Date" for the loan as December 16, 2023 and purported to require repayment by December 16, 2023.

39.     Dr. Gurel protested that the $300,000 was an investment, not a loan. Mr. Harkrider stated that a promissory note would be better for Dr. Gurel because a promise to repay a loan was more enforceable in court.

40.     The promissory note was unsecured and provided no other assurances that Dr. Gurel would receive repayment.

41.     Moreover, the "Maturity Date" for repayment under the promissory note would have removed Dr. Gurel's ability to file suit in court because, by December 16, 2023, the statute of limitations on any claims related to Dr. Gurel's investment would have expired.

42.     Dr. Gurel declined to accept the promissory note.

43.     In late April 2019, Dr. Gurel again met with Mr. Harkrider in Istanbul.

44.    At that meeting, Dr. Gurel asked about Alto Houston 1, the subsidiary that was supposed to be created upon his investment in Alto and stated that, if the company had been created, Ali Gurel demanded to withdraw from his partnership with Mr. Sarimsakci.

45.    Also at that meeting, Mr. Harkrider informed Dr. Gurel, for the first time, that Mr. Sarimsakci had died. Mr. Harkrider stated that Mr. Sarimsakci died approximately one week before the meeting.

46.    Approximately one month later, Mr. Harkrider informed Dr. Gurel that (1) the Alto Houston 1 subsidiary had not been created, (2) he could not find any information on the Alto Houston 1 subsidiary in Mr. Sarimsakci's notes, and (3) he could not find a registered company under the name "Alto Houston 1, LLC."

47.    Dr. Gurel asked Mr. Harkrider about how Ali Gurel's visa application could have been granted without Alto Houston 1's existence. Mr. Harkrider replied that the company would have been created after the visa application was completed, but only if Ali Gurel's visa had been approved.

48.    Mr. Harkrider's response was materially different than what he had communicated to Dr. Gurel before the $300,000 investment was provided.

49.    Dr. Gurel then requested copies of the books or records showing his investment in Alto, to which he should have been entitled as a shareholder or investor. No accounting or documents were provided.

50.    Public records research reveals that an Alto Houston 1, LLC entity was formed in Texas on July 2, 2018, prior to Dr. Gurel's investment.  The governing persons set forth in the Certificate of Formation are Yusuf Sarim sakci (sic) and Ergin Cinan.  That entity forfeited its existence in 2020.

51.    Dr. Gurel continued to demand the return of his $300,000 investment and copies of the books and records from Alto, but never received any response.

52.    On November 9, 2019, Dr. Gurel, though his attorney, sent a letter to Mr. Harkrider rejecting the promissory note offered in April 2019.

53.    Also in that letter, Dr. Gurel again demanded the return of his $300,000 and requested an accounting of his investment to date.

54.    Dr. Gurel has repeatedly requested the return of his $300,000 investment, which was induced by the false representations of Mr. Harkrider, Mr. Sarimsakci, and Alto, but his money has not been returned.

55.    Dr. Gurel's multiple requests for an accounting from Alto's books have also not been honored.

## V.    CAUSES OF ACTION

**COUNT 1: FRAUD (by All Plaintiffs against All Defendants)**

56.    Plaintiffs incorporate and re-allege paragraphs 1-55 as stated above.

57.    Mr. Harkrider made knowingly false representations to Dr. Gurel and Ali Gurel including the following:

- that he had a special relationship with the U.S. Department of State and expertise in securing visas for foreign citizens who invest substantial amounts of money in the United States;

- that he would invest the $100,000 paid to him in cash by Dr. Gurel into a U.S. company for purposes of making an investment for Ali Gurel's E-2 treaty investor visa application;

- that he would invest the $200,000 transferred by Dr. Gurel into a U.S. company for purposes of making an investment for Ali Gurel's E-2 treaty investor visa application;

- that once Dr. Gurel provided $300,000 to Mr. Harkrider, Mr. Sarimsakci, and Alto, Mr. Sarimsakci and Alto would create a new company, Alto Houston 1, in which Mr. Sarimsakci and Ali Gurel would become business partners;

- that Dr. Gurel's $300,000 investment in Alto and the subsequent creation of Alto Houston 1 with his son, Ali Gurel, as a business partner would enable Ali Gurel to qualify for an E-2 treaty investor visa; and

- that Dr. Gurel would receive an annual payment of 3% interest for the $300,000 investment.

58.     Mr. Harkrider's representations regarding the alleged investment were also made on behalf of and with the knowledge of Mr. Sarimsakci and Alto that the representations were being made and that the representations were false.

59.     Upon information and belief, Mr. Harkrider does not have any special relationship with the U.S. Department of State and does not have expertise in securing visas for foreign citizens who invest substantial amounts of money in the United States. These representations by Mr. Harkrider were knowingly false when made.

60.     Mr. Harkrider falsely represented that Dr. Gurel's $300,000 investment in Alto and the subsequent creation of Alto Houston 1 would enable his son, Ali Gurel, to qualify for an E-2 treaty investor visa.   Upon information and belief, Mr. Harkrider knew that the $300,000 investment by Dr. Gurel would not qualify for an E-2 visa as "a substantial amount of capital in a bona fide enterprise in the United States." He also knew that Ali Gurel would not be qualified to

remain in the U.S. "solely to develop and direct the enterprise," and would not meet the qualifications for an E-2 treaty investor visa.

61.    Mr. Harkrider, Mr. Sarimsakci, and Alto did not intend to use any of Dr. Gurel's $300,000 as an investment for purposes of Ali Gurel's E-2 treaty investor visa.  Upon information and belief, Mr. Harkrider, Mr. Sarimsakci, and Alto did not use any of Dr. Gurel's $300,000 as an investment.

62.    Mr. Harkrider, Mr. Sarimsakci, and Alto did not intend to and did not pay Dr. Gurel an annual payment of 3% interest upon his investment.

63.    These false representations were made by Mr. Harkrider, Mr. Sarimsakci, and Alto to Dr. Gurel to persuade him to provide the $100,000 to Mr. Harkrider and $200,000 to Mr. Sarimsakci supposedly for investment in Alto.

64.    Mr. Sarimsakci and Alto created the Alto Houston 1 entity before Dr. Gurel's investment and without Ali Gurel's involvement.  Upon information and belief, Mr. Sarimsakci and Alto did not create Alto Houston 1 for the purpose of Dr. Gurel's investment and did not and did not intend to ever include Ali Gurel in Alto Houston 1 as a business partner.  Upon information and belief, Mr. Sarimsakci and Alto never intended to create any new subsidiary company in which Ali Gurel would be a partner. Upon information and belief, Mr. Harkrider also knew they never intended to do so.

65.    At all times, Mr. Harkrider, Mr. Sarimsakci, and Alto acted in concert and with a common purpose to defraud Dr. Gurel and Ali Gurel.

66.    Mr. Harkrider, Mr. Sarimsakci, and Alto made these knowingly false representations to induce Plaintiffs to act by providing money to Mr. Harkrider, Mr. Sarimsakci,

and Alto for the supposed investment and to support Ali Gurel's application to USCIS for an E-2 treaty investor visa.

67.     Plaintiffs reasonably and justifiably relied on Mr. Harkrider's representations of his own qualifications and expertise in securing visas on behalf of investors.

68.     Plaintiffs reasonably and justifiably relied on Mr. Harkrider's, Mr. Sarimsakci's, and Alto's representations (including through Mr. Harkrider) that the $300,000 would be invested in Alto, that a new subsidiary with Ali Gurel as a partner would be formed with the $300,000 investment, and that Dr. Gurel would be paid a 3% annual interest return on his investment.

69.     Plaintiffs reasonably and justifiably relied on Mr. Harkrider's representations that a $300,000 investment and a partnership in Alto Houston 1 would be sufficient to allow Ali Gurel to obtain an E-2 treaty investor visa.

70.     Based on the knowingly false representations of Mr. Harkrider, Mr. Sarimsakci, and Alto, Plaintiffs paid $300,000 to Mr. Harkrider, Mr. Sarimsakci, and Alto.

71.     Based on the knowingly false representations of Mr. Harkrider, Mr. Sarimsakci, and Alto, Ali Gurel submitted an application to USCIS for an E-2 treaty investor visa.

72.     These representations were material.  Dr. Gurel would not have provided $300,000 to Mr. Harkrider, Mr. Sarimsakci, and Alto without these knowingly false representations.

73.     Plaintiffs have been damaged by these knowingly false representations.

74.     When Plaintiffs demanded an accounting or return of Dr. Gurel's $300,000, Mr. Harkrider instead attempted to convince Plaintiffs to accept an illusory promissory note with no security, promising payment in five years.

75.     Because the time in which to bring a claim for fraud is generally four years or less, this promissory note, if accepted, likely would have prevented any claims being brought in a court for the fraudulent scheme of Mr. Harkrider, Mr. Sarimsakci, and Alto.

76.     Upon information and belief, Mr. Harkrider knew the proposed promissory note, if accepted, would prevent Dr. Gurel from bringing a fraud claim based on his and Mr. Sarimsakci's knowingly false representations.

77.     Upon information and belief, Mr. Harkrider sent the proposed promissory note that purportedly committed Mr. Sarimsakci to pay Dr. Gurel after Mr. Sarimsakci had died and after Mr. Harkrider knew that Mr. Sarimsakci had died.

78.     Mr. Harkrider intentionally concealed from and failed to disclose to Dr. Gurel that Mr. Sarimsakci was deceased when he sent the proposed promissory note purportedly from Mr. Sarimsakci. Dr. Gurel did not know and did not have an equal opportunity to discover at that time that Mr. Sarimsakci was deceased, and Mr. Harkrider knew that.

79.     Mr. Harkrider's intentional concealment of and failure to disclose information about Mr. Sarimsakci's death was material to his representations that Mr. Sarimsakci would pay Dr. Gurel pursuant to the terms of the proposed promissory note if Dr. Gurel would sign the proposed promissory note.  Mr. Harkrider intended to induce Dr. Gurel to sign the proposed promissory note.

80.     By proposing a promissory note from a deceased person, and a promissory note that would prevent Plaintiffs from bringing this claim before a court, Mr. Harkrider demonstrated malicious and deliberate conduct that further aggravated the fraudulent misrepresentations of Mr. Harkrider, Mr. Sarimsakci, and Alto.

81.     Exemplary and punitive damages are appropriate due to the harm to Plaintiffs resulting from the fraud and malice of Mr. Harkrider, Mr. Sarimsakci, and Alto.

82.     Dr. Gurel has been damaged as a direct and proximate result of the actions of Mr. Harkrider, Mr. Sarimsakci, and Alto and demands judgment against the Defendants, jointly and severally, for actual and exemplary/punitive damages..

**COUNT 2: NEGLIGENT MISREPRESENTATION (by All Plaintiffs against All Defendants)**

83.     Plaintiffs incorporate and re-allege paragraphs 1-55 as stated above.

84.     Mr. Harkrider, Mr. Sarimsakci, and Alto made representations to Plaintiffs in the course of Mr. Harkrider's, Mr. Sarimsakci's, and Alto's business and in a transaction in which the Mr. Harkrider, Mr. Sarimsakci, and Alto had a pecuniary interest – the supposed investment by Dr. Gurel.

85.     Mr. Harkrider, Mr. Sarimsakci, and Alto made numerous negligently false statements. Mr. Harkrider, Mr. Sarimsakci, and Alto did not take reasonable care in obtaining information for and communicating information to Plaintiffs in relation to this transaction, for the purpose of guiding Plaintiffs and intending that Plaintiffs would act on those statements. Such negligently false statements included statements about how Dr. Gurel's $300,000 investment would be used, about Ali Gurel's qualifications for an E-2 treaty investor visa, about Mr. Harkrider's special relationship with the U.S. State Department and expertise in obtaining E-2 visas, about the payment of interest to Dr. Gurel on his investment, and about Mr. Sarimsakci's ability to repay Dr. Gurel's investment after his death.

86.     At all times, Mr. Harkrider, Mr. Sarimsakci, and Alto acted in concert and with a common purpose in their business negotiations with Plaintiffs, in which they made numerous negligent misrepresentations.

87.    Plaintiffs reasonably and justifiably relied on Mr. Harkrider's representations of his own qualifications and his expertise in securing visas on behalf of investors.

88.    Plaintiffs reasonably and justifiably relied on Mr. Harkrider's, Mr. Sarimsakci's and Alto's representations (including through Mr. Harkrider) that the $300,000 would be invested in Alto, that a new subsidiary with Ali Gurel as a business partner would be formed with the $300,000 investment, and Dr. Gurel would be paid a 3% annual interest return on his investment.

89.    Plaintiffs reasonably and justifiably relied on Mr. Harkrider's representations that a $300,000 investment and a partnership in Alto Houston 1 would be sufficient to allow Ali Gurel to obtain an E-2 treaty investor visa.

90.    Based on the negligent misrepresentations of Mr. Harkrider, Mr. Sarimsakci, and Alto, Plaintiffs paid $300,000 to Mr. Harkrider, Mr. Sarimsakci, and Alto, with the understanding that the money would be invested into Alto under the terms agreed, and that Mr. Sarimsakci and Alto would then create Alto Houston 1 with Ali Gurel as a business partner.

91.    Based on the negligent misrepresentations of Mr. Harkrider, Mr. Sarimsakci, and Alto, Plaintiff Ali Gurel submitted an application to USCIS for an E-2 treaty investor visa.

92.    Dr. Gurel would not have provided $300,000 to Mr. Harkrider, Mr. Sarimsakci, and Alto, and Ali Gurel would not have submitted an application to USCIS for an E-2 treaty investor visa without these negligent misrepresentations.

93.    Mr. Harkrider, Mr. Sarimsakci, and Alto knew that Plaintiffs would rely on these and other negligently false statements. Mr. Harkrider, Mr. Sarimsakci, and Alto knew that if their statements were erroneous, Plaintiffs would be injured by relying on them.

94.    Plaintiffs have been damaged by being relying on the negligently false misrepresentations of Mr. Harkrider, Mr. Sarimsakci, and Alto.

95.     When Plaintiffs demanded an accounting or return of Dr. Gurel's $300,000, Mr. Harkrider instead attempted to convince Plaintiffs to accept an illusory promissory note with no security, promising payment in five years.

96.     Mr. Harkrider negligently failed to disclose that the proposed promissory note, if accepted, would prevent Dr. Gurel from bringing a legal claim based on his and Mr. Sarimsakci's negligent misrepresentations.

97.     Mr. Harkrider sent the proposed promissory note that purportedly committed Mr. Sarimsakci to pay Dr. Gurel $300,000 in December 2023, while negligently omitting information that Mr. Sarimsakci was dead.

98.     Mr. Harkrider's negligent omission of information about Mr. Sarimsakci's death was material to his representations that Mr. Sarimsakci would pay Dr. Gurel in December 2023.

99.     By proposing a promissory note from a deceased person, and a promissory note that could prevent Plaintiffs from bringing this claim before a court, Mr. Harkrider demonstrated actual malice, which aggravated the negligent misrepresentations of Mr. Harkrider, Mr. Sarimsakci, and Alto.

100.    Exemplary and punitive damages are appropriate due to the harm to Plaintiffs resulting from the fraud and malice of Mr. Harkrider, Mr. Sarimsakci, and Alto.

101.    Plaintiffs have been damaged as a direct and proximate result of the actions of Mr. Harkrider, Mr. Sarimsakci, and Alto and demand judgment against the Defendants, jointly and severally, for actual damages and exemplary/punitive damages.

**COUNT 3: CONVERSION (by Plaintiff Galip Gurel against All Defendants)**

102.    Plaintiffs incorporate and re-allege paragraphs 1-55 as stated above.

103.    Dr. Gurel owns and has the immediate right to possession of the $300,000 that was personal property of funds that were specifically provided to Mr. Harkrider, Mr. Sarimsakci, and Alto to be invested, but were not.

104.    Mr. Harkrider, Mr. Sarimsakci, and Alto misappropriated and took possession of Dr. Gurel's $300,000 under false pretenses.

105.    By taking possession of Dr. Gurel's property under false pretenses and using the money in a manner that departs from the conditions under which the money was received, Mr. Harkrider, Mr. Sarimsakci, and Alto have wrongfully exercised dominion and control over that property and have interfered with Dr. Gurel's rights of ownership over that property.

106.    Plaintiffs have repeatedly requested the return of Dr. Gurel's $300,000.

107.    Mr. Harkrider, Mr. Sarimsakci (through Ms. Sarimsakci and Estate), and Alto have the power to return Dr. Gurel's $300,000.

108.    Mr. Harkrider, Mr. Sarimsakci, and Alto have refused to return Dr. Gurel's $300,000.

109.    As demonstrated by Counts 1 and 2 above, Mr. Harkrider, Mr. Sarimsakci, and Alto acted with fraud and/or malice that caused injury to Plaintiffs, supporting exemplary or punitive damages.

110.    Plaintiffs have been damaged as a direct and proximate result of the actions of Mr. Harkrider, Mr. Sarimsakci, and Alto and demand judgment against the Defendants, jointly and severally, for actual and exemplary/punitive damages.

**COUNT 4: MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT (by Plaintiff Galip Gurel against All Defendants)**

111.    Plaintiffs incorporate and re-allege paragraphs 1-55 as stated above.

112.    Dr. Gurel provided $100,000 to Mr. Harkrider and $200,000 to Mr. Sarimsakci for an investment into Alto, and the creation of a subsidiary, Alto Houston 1, with Ali Gurel as a partner.

113.    Dr. Gurel's $300,000 was not invested into Alto, and a subsidiary was not created with Ali Gurel as a partner.

114.    Dr. Gurel has received no services or goods in exchange for the $300,000 provided to Mr. Harkrider, Mr. Sarimsakci, and Alto.

115.    Upon information and belief, Dr. Gurel's $300,000 has not been invested into any company.

116.    Mr. Harkrider, Mr. Sarimsakci, and Alto have refused to return Dr. Gurel's $300,000 despite repeated requests.

117.    Mr. Harkrider, Mr. Sarimsakci, and Alto have refused to provide any evidence that Dr. Gurel's $300,000 has been invested, or any accounting of the present location of Dr. Gurel's $300,000.

118.    Mr. Harkrider, Mr. Sarimsakci, and Alto have knowledge of the benefit they have received.

119.    Mr. Harkrider, Mr. Sarimsakci, and Alto have acknowledged Dr. Gurel's payments to them in correspondence.

120.    Mr. Harkrider, Mr. Sarimsakci (through Ms. Sarimsakci and Estate), and Alto hold money that belongs to Dr. Gurel in equity and good conscience.

121.    Dr. Gurel has been unjustly deprived of his $300,000, and Mr. Harkrider, Mr. Sarimsakci (including through Ms. Sarimsakci and Estate), and Alto have been unjustly enriched by retaining Dr. Gurel's $300,000.   Mr. Harkrider, Mr. Sarimsakci (including through Ms.

Sarimsakci and Estate), and Alto obtained the benefit of $300,000 from Dr. Gurel by fraud or taking undue advantage.

122.    As demonstrated in Count 1 and 2 above, Mr. Harkrider, Mr. Sarimsakci, and Alto acted with fraud and/or malice that caused injury to Dr. Gurel, supporting exemplary or punitive damages.

123.    Dr. Gurel has been damaged as a direct and proximate result of the actions of Mr. Harkrider, Mr. Sarimsakci, and Alto and demands judgment against the Defendants, jointly and severally, for actual and exemplary/punitive damages.

## **PRAYER FOR RELIEF**

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer herein, and that this Court enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, as follows:

1.    For compensatory damages in the amount of at least $300,000;

2.    For exemplary and punitive damages in the amount of at least $1,000,000;

3.    For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4.    For costs of suit incurred herein; and

5.    For such other relief, both general and specific, at law or in equity, to which Plaintiff may be justly entitled and as the Court may deem proper.

Dated:        July 29, 2020                  THOMPSON COBURN LLP

By */s/ Nicole L. Williams*
Nicole L. Williams
Texas Bar No. 24041784
1919 McKinney Ave, Suite 100
Dallas, TX  75201
972-629-7100
972-629-7171 (fax)
nwilliams@thompsoncoburn.com

***Attorneys for Plaintiffs***